SAM BRANDON, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals. Submitted on Briefs February 9, 1910. Opinion filed March 8, 1910.

1. RAILROADS: Killing Animals: Fencing: Feasibility of, a Question of Fact. In an action against a railroad company for double damages for killing cattle the question whether the ground at the point where the cattle went upon the track could or could not be fenced is a question of fact.

2. APPELLATE PRACTICE: Finding by Trial Court Conclusive. The finding by the trial court on a question of fact is conclusive on appeal, except where there is no evidence to sustain it.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED.

*W. F. Evans* and *Moses Whybark* for appellant.

The court erred in overruling the demurrer to the evidence offered by the defendant at the close of the plaintiff's case. Smith v. Railroad, 111 Mo. App. 410; Foster v. Railroad, 112 Mo. App. 72; McGuire v. Railroad, 113 Mo. App. 79; Acord v. Railroad, 113 Mo. App. 84; Welch v. Railroad, 131 Mo. App. 464.    (a) It is the well-settled law in this State that railroad companies are not required to fence at their depots or stations such portion of the road as it is necessary to keep open for the transaction of business with the public, and the reception and discharge of freight and passengers. Acord v. Railroad, 113 Mo. App. 94 and cases cited.    (b) The testimony of the plaintiff's own witness, Meatte, was to the effect that the spur or switch track at Brinkerhoff was used by everybody who wanted to ship; that freight was loaded and unloaded there, and placed in a small house near the track which was used as a freight house; that local freight trains stopped there, and that two passenger trains stopped there daily, one north-bound and one south-bound. This testimony clearly showed a willingness on the part of the railroad company to do business at this point with the general public, and the public accepted such invitation and did business there. The maintenance of a depot at Brinkerhoff was not indispensable to constitute it a "station." Foster v. Railroad, 112 Mo. App. 72; Acord v. Railroad, 113 Mo. App. 102; Welch v. Railroad, 131 Mo. App. 469.

*J. V. Conran* for respondent.

REYNOLDS, P. J.—Action for damages for killing cattle at a point in Pemiscot county, it being averred in the petition that the animals "strayed upon the track and grounds occupied by the railroad of defendant at a point where it passes through, along or adjoining inclosed and cultivated fields or uninclosed lands, and where the defendant was by law required to erect and maintain good and lawful fences with sufficient cattle-guards and at a point not within the switch limits of any station, not at a public road crossing, nor within the limits of any incorporated city, town or village."

The evidence on the part of plaintiff—noticing only that part of it which relates to the local situation—was to the effect that the animals were killed at a flag station named Brinkerhoff—a station at which there is a small house for storing freight and at which two local daily freight and passenger trains stopped, through trains stopping on signal. No agent was stationed there, no tickets sold.

The railroad track runs north and south there. There are cattle-guards north and south of this freight house and between them and south of the freight house a switch or spur track takes off from the main track and to the east of it. The south cattle-guard is about 577 feet south of the switchstand, and the north about 344 feet north of it. The freight house is said to be almost 100 or 150 feet north of the switchstand. The space between the main track and the switch appears to have been used for piling ties. To the west of the track between the cattle-guards appears to be open woodlands. On the east of the main track and between it and the switch track is a water hole. The cattle came from the west, crossing the main track to this water hole, and were drinking there, when an engine drawing a passenger train, coming from the south and when about 500 feet from where the cattle were, whistled, and when the cattle started back from the east of

the track to cross over to the west they were hit and the three sued for killed. There is no fence along either side of the track at this·point. No fence for about 307 yards between the cattle-guards. It is open woods between those points. The cattle went on the track from the west,·coming out of the woods, at a point about 100 or 150 feet south of the head of the switch, crossed over the track to the water and then started back over the track. The switch is about 300 or 400 feet long and is used for everybody to ship who wants to do so; is used for accommodation of every one who desires to ship ties. All the space between the switch and the main track where the animals went on the right of way is used for piling ties; nothing there but ties at the time, about 5000 of them piled to the east of the main track, between it and the switch.

The only evidence on the part of the defendant was a plat, identified as a correct plat of the *locus in quo*. We omit the testimony as to value, ownership, etc., as not material here.

At the conclusion of the testimony defendant demurred, which demurrer the court overruled, and sitting as a jury, a jury having been waived, found for plaintiff, assessing the value of the cattle killed at seventy dollars and on motion of plaintiff entered judgment for double this assessed value.

No instructions or declarations of law were asked or given—other than that of defendant in the nature of a demurrer. In due time defendant filed its motion for a new trial, and that being overruled, perfected an appeal to this court, saving exception to the adverse ruling of the court.

The error assigned is to the action of the court in overruling the demurrer, it being contended that it is the well-settled law of this State that railroad companies are not required to fence at depots or stations such portions of their roads as it is necessary to keep open for the transaction of business with the public

and the receipt and discharge of freight, and that the testimony of plaintiff's own witnesses was to the effect that the spur or switch track was used by everybody who wanted to ship; that the evidence showed that the defendant was willing to do business with the public at that point and that the public had accepted the invitation of the defendant. Cases relied on are Smith v. Railroad, 111 Mo. 410, 85 S. W. 972; Foster v. Railroad, 112 Mo. App. 67, l. c. 72, 87 S. W. 57; McGuire v. Railroad, 113 Mo. App. 79, 87 S. W. 564; Acord v. Railroad, 113 Mo. App. 84, 87 S. W. 537; and Welch v. Railroad, 131 Mo. App. 464, 109 S. W. 1074. We have examined all these cases and have a right to assume that they were all called to the attention of the learned trial judge. In all of these cases, the question of whether the ground at this point and the place at which the cattle went upon the track could or could not be fenced, are held to be questions of fact, the finding on which by the trial court is conclusive on the appellate court save in the absence of any probative evidence to sustain it. According to the plat produced by defendant and in evidence, and according to the oral testimony, there was space of from 100 to 150 feet between the freight house and the point where the spur track leaves the main track. The unfenced and unguarded switch and station space between cattle-guards and fence was 921 feet, 307 yards. It would seem that the trial judge found this too much to allow for switching limits and that there was ample space to have allowed cattle-guards south of the freight house, between it and the spur stand, and to have permitted them without interference with the safe and convenient loading and switching of cars or endangering the lives of the railroad men. With the evidence as to the local situation before him, and with the law in mind, we must assume, in the absence of declarations or instructions asked or given, that the finding of the

learned trial judge is correct and that the so-called switching limits were unnecessarily long.    Granting full faith and credit to that finding, supported as it is by evidence, the judgment must be and it is affirmed. All concur.